Dear Mr. Hughes:
You requested the opinion of this office concerning the expenditure of enhanced 911 telephone system funds by the West Feliciana Parish Communications District (the "District") in cooperation with the Office of the West Feliciana Parish Sheriff (the "sheriff").
You advised that in 1990, the voters of West Feliciana Parish (the "parish") approved two propositions relating to an enhanced 911-telephone system for the Parish. Proposition No. 1 established for an indefinite time period, a five percent (5%) surcharge of the tariff rate for local telephone service supplied within the District for the purpose of "establishing, maintaining and operating an enhanced 911 emergency telephone system".
Proposition No. 2 approved a levy of a one mill property tax for a period of five (5) years for the purpose of "acquiring, constructing, improving, maintaining and/or operating an enhanced 911 telephone system (including the payment of necessary dispatch personnel)". The property tax was renewed for an additional five (5) year period in both 1995 and 1999.
You further advised that the Sheriff's Office, which provides operators for the 911 system and handles all dispatching, has approached the Police Jury for approval of the expenditure of District funds in cooperation with the Sheriff's Office for the construction, operation and maintenance of a "911 Wing" to be attached to a jail complex being constructed by the Sheriff's Office. The Sheriff's proposal was attached to your opinion request and states that the cost of the building and technology will be approximately $765,000. The Sheriff is also requesting that the District pay for 75% of the operational cost of $330,000, with the other 25% being paid for by other parish entities. The operational costs include two dispatchers per shift, one supervisor, plus benefits, insurance and utilities. The nine employees will be under the Sheriff's supervision and liability. Their duties will be to answer all emergency calls coming into the center as well as dispatching for the Sheriff, Fire, EMS, City Police and the Police Jury.
You requested the opinion of this office as to whether the tax proceeds could be expended for such purposes.
R.S. 39:704 provides:
 "The proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied. The records of the taxing authority shall clearly reflect the objects and purposes for which the proceeds of the tax are used."
Since the scope of the authority for the expenditure of millage revenues is concomitant to the consent of the electorate, the ordinary sense of the words contained in the proposition is dispositive of their meaning for the electorate approving the millage.
The laws comprising Local Emergency Telephone Systems are found at R.S. 45:791, et seq. and the Communications Districts, themselves, are found at R.S. 33:9101, et seq. These laws reveal that the purposes for which such Districts are created are to establish, maintain and operate a 911 emergency telephone service, and to improve the identification of thoroughfares and dwellings.
With regards to Proposition 1, R.S. 33:9106 (B) (1) (a) authorizes the governing authority of a communications district to, when authorized by the electorate, levy an emergency telephone service charge in an amount not to exceed five percent of the tariff rate. However, subsection 9106 (B) (2) further provides that If the proceeds generated by an emergency telephone service charge exceed the amount of monies necessary to fund the district, the "district governing authority shall, by ordinance,reduce the service charge rate to an amount adequate to fund the district. . ." (Emphasis added) "Fund the district" is defined in subsection 9106 (A) (7) to mean "pay the expenses necessary to carry out all purposes of the district, including but not limited to identification of all streets, roads, highways . . ."
It is the opinion of this office that the funds derived from the surcharge imposed pursuant to Proposition No. 1 can only be used for the purposes stated in the proposition, namely "establishing, maintaining and operating an enhanced 911 emergency telephone system", which would include the operational expenses stated in your request but not the cost of constructing the building.
We should note that in Op.Atty.Gen. Nos. 96-97 and 96-97A, this office concluded that a communications district is not authorized to use its surcharge revenues for answering non-emergency calls and/or call-taking and dispatching non-emergency radio transmissions for other public entities located within the District's geographical boundaries.
With regards to Proposition 2, again the proceeds of the tax can only be used for the purposes set forth in the proposition, which are "acquiring, constructing, improving, maintaining and/or operating an enhanced 911 telephone system". We are of the opinion that such a system must be located in a building and see no impediment to the District using the proceeds to construct a building to house the 911 system. The building and staff may be used in part for non-911 purposes, if, as you state, the costs of same will be borne by entities other than the District. We would suggest that the entities who will be participating enter into a cooperative endeavor or local services agreement as provided in R.S. 33:1321, et seq. Section 1324 provides, in pertinent part, the following:
 "Any parish, municipality or political subdivision of the state, or any combination thereof, may make agreements between or among themselves to engage jointly in . . . the promotion and maintenance of any undertaking or the exercise of any power, provided that at least one of the participants to the agreement is authorized under a provision of general or special law to perform such activity or exercise such power as may be necessary for completion of the undertaking. Such arrangements may provide for the joint use of funds, facilities, personnel or property or any combination thereof necessary to accomplish the purposes of the agreement, and any such agreements may include but are not limited to activities concerning:
 (1) Police, fire and health protection." (Emphasis added.)
Section 1323 provides for a liberal construction relating to such joint transactions as follows:
 "This Part shall be construed liberally, to the end that, through the use of arrangements provided herein, greater economy and efficiency in the operation of local services may be encouraged, and the benefits of such services may be extended."
Section 1324.1 authorizes contracts for such services as follows:
 "In order to effect economy of operation, any two or more political corporations or subdivisions may contract with each other to combine the use of administrative and operative personnel and equipment upon such basis of compensation therefor as may be mutually agreed to by all such political corporations and subdivisions"
The form and publication of the agreements authorized under the Local Services Law are governed by Section 1325:
 "All arrangements concluded under the authority of R.S. 33:1324 shall be reduced to writing. For this purpose it shall suffice for each party to the agreement, acting through its governing body, to accept the agreement by the passage of an ordinance or resolution setting out the terms of the agreement. The agreement, ordinance, or resolution shall be published in the official journal of the parish or municipality, in the same manner as are the other proceedings of the governing body."
The contents of the written agreements are addressed in Section 1331, in pertinent part, as follows:
 "Agreements concluded under R.S. 33:1324 and all written agreements concluded under R.S. 33:1325 shall include a statement of the financial obligations of each of the parties to the agreement."
Of course, the statutes comprising the Local Services Law must be read together with the Constitution and laws relating to the District to insure that the agreement does not violate the constitutional and/or the statutory provisions limiting the District's use of its surcharge and tax revenues.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ________________________________ MARTHA S. HESS Assistant Attorney General
PRPI/MSH
Date Released: November 15, 2001